UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Illinois Farmers Insurance Company,
21st Century Insurance Company, and
Bristol West Casualty Insurance Company,

        Plaintiffs,

v.

Mobile Diagnostic Imaging, Inc.,
Michael A. Appleman,
Steve Poser, D.C.,
Elite Health Chiropractic, P.C.,
Affinity Health Chiropractic, P.A.,
Assiat Boke, D.C.,
Assiat Boke Chiropractic, P.A.,
Richard Ottomeyer, D.C.,
Ottomeyer Clinics, PLLC,
Leo R. Gonsowski III, D.C.,
Arch Chiropractic, P.C.,
Danial Hall, D.C.,
Lois Hall, D.C.,
Hall Family Chiropractic Clinic,
Steven Karg, D.C.,
Rockford Chiropractic,
John Valentini, D.C.,
Michael B. Shinder, D.C.,
Four Seasons Chiropractic, Ltd.,
Mateus Ferraz-Souza, D.C.,
Universal Care Clinics, Inc.,
Daniel G. Anderson, D.C.,
Anderson Chiropractic Clinic, P.A.,
Jeffrey Danielson, D.C.,
Northern Life Chiropractic, P.A.,
Andrea Ruhland, D.C.,
Lakeville Family Chiropractic, Ltd.,
Duylinh Nguyen D.C.,
Optimum Chiropractic,
Richard Stoffels, D.C.,
Stoffels Chiropractic, Ltd.,

**COMPLAINT**

**Jury Trial Demanded**

Lowell Magelssen, D.C.,
First Chiropractic – Shoreview,
Robin Harstad D.C.,
Overstad Chiropractic, P.A.,
Jeff Schneider D.C.,
Hillside Chiropractic Clinic, Inc.,
Dorothy Saunders, D.C., a/k/a
Dorothy O'Connor, D.C.,
Team Chiropractic & Wellness Center, Ltd.
Mark A. Johnson, D.C.,
MetroCenter Chiropractic, P.A.,
Guy Caspers, D.C.,
Caspers Chiropractic Center, P.C.,
Steven Moe, D.C.,
Integrated Health and Wellness, Ltd.,
Shaun Gifford, D.C.,
Pro Adjuster Chiropractic,
Brent Scheideman, D.C.,
Scheideman Chiropractic & Body
Shop, Inc.,
Kathleen A. Bloom, D.C.,
Bloom Chiropractic Center, P.A.,
Scot Pearson, D.C.,
Pearson Chiropractic Clinic,
Aaron Kirking, D.C.,
Spinal Health,
Michael Lamppa, D.C.,
Active Life Chiropractic,
Lamppa Chiropractic, P.A.,
Steven Jackson, D.C.,
Jackson Chiropractic Clinic,

Allen Tran D.C.,
Prestige Chiropractic, P.A.,
Denis Boerjan, D.C.,
Advance Chiropractic Clinic,
Denis Boerjan, LLC,
Carron Perry, D.C.,
Candace Salmi, D.C.,
BodyMind Chiropractic Center,
Brent Kvam, D.C.,
Healthstar Chiropractic Center, P.A.,
Stephan M. DeHaven, D.C.,
DeHaven Chiropractic Clinic,
DeHaven Chiropractic Clinic, Inc.,
Derek Johnson, D.C.,
Wellness Team of Nisswa,
Cynthia Starbuck, D.C.,
Healing Hands Wellness Center, LLC,
Joseph Virga, D.C.,
Kathleen Virga, D.C.,
Virga Chiropractic Clinic, P.A.,
Mark Reeve, D.C.,
Reeve Chiropractic Clinic, P.A.,
David Atkinson, D.C.,
Boulevard Chiropractic Clinic, P.A.,
Douglas Edwards, D.C.,
Albert Lea Chiropractic, PLC,
Michael Kilpatrick, D.C.,
New Prague Family Chiropractic,
Eric T. Brandt, D.C.,
Riverside Family Chiropractic Clinic Chartered,
Stephen L. Engel, D.C.,
Engel Chiropractic, P.A.,
Matthew C. Mayo, Jr., D.C., and
Mayo Chiropractic,

Defendants.

_____

Plaintiffs Illinois Farmers Insurance Company, 21st Century Insurance and Bristol West Casualty Insurance Company (hereinafter "Plaintiffs"), by their attorney, Richard S. Stempel of Stempel & Doty, PLC, for their Complaint against Defendants state as follows:

## I.  INTRODUCTION AND NATURE OF THE CASE

1. Defendants have exploited the Minnesota No-Fault Automobile Insurance Act (hereinafter "the No-Fault Act") by creating a network of medical providers who pay or receive illegal kickbacks for the referrals of patients for MRI scans.[1]  Since Defendants have victimized not only Plaintiffs but the citizens of Minnesota, Defendants should be held accountable under federal and state law, including the federal RICO Act, the Minnesota Consumer Protection Act, the Minnesota No-Fault Act, and the common law doctrines of fraud, piercing the corporate veil, negligent misrepresentation, the Corporate Practice of Medicine Doctrine, civil conspiracy, fraudulent concealment, and unjust enrichment.

## II. JURISDICTION AND VENUE

2.    Jurisdiction is conveyed upon the District Court of the District of Minnesota pursuant to 28 U.S.C. § 1331 since this action is authorized pursuant to the laws of the United States of America, i.e., the Racketeer Influence and Corrupt Organizations Act (hereinafter "the RICO Act") pursuant to 18 U.S.C. §§ 1961-68.

3.    Jurisdiction is conveyed upon the District Court of Minnesota pursuant to 28 U.S.C. § 1332 for the claims made by Plaintiff Illinois Farmers Insurance Company

---

[1] "MRI" stands for "magnetic resonance imaging."

against Defendants MDI and Michael A. Appleman and the claims made by Plaintiff Illinois Farmers Insurance Company against Defendants Steve Poser, D.C., Elite Health Chiropractic, P.C., and Affinity Health Chiropractic, P.A.., because diversity of citizenship exists between Plaintiff Illinois Farmers Insurance Company and the aforementioned defendants and because the relevant amounts in controversies involving the aforementioned defendants exceed $75,000.00.

4.     Jurisdiction is conveyed upon the District Court of Minnesota pursuant to 28 U.S.C. § 1367 because the state claims are so related to the federal claims that the state claims form part of the same case or controversy under Article III of the United States Constitution.

5.     The United States District Court – District of Minnesota is the proper venue for this action pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events that give rise to Plaintiff's claims occurred in this judicial district, or alternatively, because there is no district where the action may otherwise be brought.  Venue in the United States District Court – District of Minnesota is also proper pursuant to 18 U.S.C. § 1965(a).

## III. BACKGROUND

### A. Plaintiffs

6.     Plaintiff Illinois Farmers Insurance Company is a corporation incorporated under the laws of California with its principal place of business in California.

7.     Plaintiff 21st Century Insurance Company is a corporation incorporated under the laws of Delaware with its principal place of business in California.

8.  Bristol West Insurance Company is a corporation incorporated under the laws of Florida with its principal place of business in Ohio.

9.  Plaintiffs are authorized to conduct business and to issue policies of automobile insurance in the State of Minnesota.

10. At all times relevant herein, Plaintiffs have been required to provide basic economic benefits for each policy of automobile insurance they sell in Minnesota. This coverage has been required in automobile insurance policies pursuant to the Minnesota No-Fault Act enacted as Minnesota Statute §§ 65B.41-.71.

**B.   Defendant Michael Appleman**

11. Michael Appleman (hereinafter "Defendant Appleman") is a citizen of Minnesota and owner of Defendant Mobile Diagnostic Imaging (hereinafter "Defendant MDI").

12. During his ownership of Defendant MDI, Defendant Appleman has not held a medical license.

13. Defendant Appleman may be served at his place of business at 6500 Barrie Road #150, Edina, Minnesota 55435.

14. In 1980, the Minnesota Board of Psychology (hereinafter "the Psychology Board") reprimanded Defendant Appleman when he applied for a psychology license.

15. The Psychology Board reprimanded Defendant Appleman for: 1) previously providing services to clients and representing himself to being a psychologist when he did not have a Minnesota psychology license; and 2) applying for employment positions and representing himself as having a clinical psychology degree when he really held a degree in educational administration.

5

16. In 1983, Defendant Appleman received a conditional license for psychology, but the Psychology Board again reprimanded him in 1990 and placed conditions on his license in 1993.

17. On January 25, 2002, the Psychology Board affirmed a decision to revoke Defendant Appleman's license. The decision resulted from a review of charges against Defendant Appleman, including, but not limited to, the following: altering client records; billing for services not provided; inadequate documentation to substantiate billings; and improperly releasing confidential information.

18. Defendant MDI opened in the months after Defendant Appleman lost his psychology license.

### C. Defendant Mobile Diagnostic Imaging

19. Defendant MDI is a Minnesota § 302A business corporation that originally filed its articles of organization on August 16, 2002.

20. Defendant MDI is incorporated under the laws of Minnesota and has its principal place of business in Minnesota.

21. The principal executive and registered office address for Defendant MDI is 6500 Barrie Road #150, Edina, Minnesota 55435.

22. Defendant MDI offers a mobile MRI machine that is transported from site to site in a large trailer.

23. According to its website, the mission of Defendant MDI "is to provide *cutting edge* diagnostic mobile imaging services."

6

24.  Defendant MDI promises to "market" the services of medical professionals and "educate" their staffs.

25.  Defendant MDI refers to the radiologists with whom it "consults" as "our radiologists" and promises that the interpretive reports of the MRI scans will be "*promptly* provided to the referring physician."

26.  The interpretive report generated by Defendant MDI and provided to the referring medical provider bears a header that reads "Mobile Diagnostic Imaging, Inc." and lists the address for Defendant MDI.  The report is signed by a medical doctor and a diplomate from the American Chiropractic Board of Radiology.  Defendant Appleman's name does not appear anywhere on the interpretive report.  (Ex. 1).

27.  Defendant MDI describes its MRI technologists as "**expert technologists**" who will "care" for the patients of the referring medical providers.

28.  According to Defendant Appleman, a position as a MRI technologist for Defendant MDI "is a highly specialized job, requiring at least four months training on the specific MRI machine … operated" by the technologist.

29.  Defendant MDI characterizes itself as "a leader in providing continuing education seminars."  These seminars appear to be targeted at chiropractors even though Defendant Appleman has never held a chiropractic license.

30.  Car accident victims who undergo MRI scans with Defendant MDI are asked to sign "medical" liens that require the patients to pay Defendant MDI for its "medical services" out of any settlements of the patients' insurance claims.  (Ex. 2).

**D. The Defendant Clinics and Chiropractors**

31. The Defendant Clinics that are incorporated are incorporated under the laws of Minnesota and have their principal places of businesses in Minnesota.

32. Defendants Elite Health and Affinity Health are citizens of Wisconsin as their member, Defendant Steve Poser, D.C., is a citizen of Wisconsin.

33. Defendants Steve Poser, D.C., Leo R. Gonsowski, III, D.C., Cynthia Starbuck, D.C., are citizens of Wisconsin.

34. The remaining Defendant Chiropractors are citizens of Minnesota.

35. The Defendant Clinics and Chiropractors are chiropractic clinics and chiropractors who received kickbacks from Defendants MDI and Appleman.

**E.  The Natures Of The Schemes**

36. Since January 1, 1996, Minnesota law has required all medical and healthcare providers to use the HCFA 1500 uniform billing form to bill for rendered services.  *See* Minn. Stat. § 62J.52, subd. 2 (2013).

37. The HCFA 1500 form is completed by the healthcare provider, and the provider must sign the form that represents the services listed in the form were medically appropriate and necessary for the care of the patient.

38. The HCFA 1500 form further provides that signing the form represents the provider or a qualified employee rendered the services.

39. In this case, the submitted HCFA 1500 forms included the claim number of the insured patient who had undergone an MRI scan. (*See* Ex. 11 (HCFA 1500 form listing a

claim number under "INSURED'S I.D. NUMBER"); Ex. 12 (MRI referral form listing the I.D. number from Exhibit 11 as the patient's claim number)).

40. The HCFA 1500 form, the Application for Benefits form and other claim forms completed by insureds and the insureds' healthcare providers contain the following notice:

> Any person who knowingly files a statement of claim containing any misrepresentation or false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties.

41. Defendants MDI and Appleman submit HCFA-1500 forms for MRI scans shortly after the MRI scans are conducted.

42. Minnesota law prevents all persons in the state from receiving any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind, in return for referring an individual to a person for the furnishing of any item or service for which payment may be made under any benefits program. *See* Minn. Stat. § 62J.23, subds. 1 – 2 (2013); *see also* 42 U.S.C.S. § 1320a-7b(b)(1)(2013).

43. Further, Minnesota law prevents all persons in the state from knowingly and willfully offering or paying any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person to refer an individual to a person for the furnishing of any item or service for which payment may be made under any benefits program. *See* Minn. Stat. § 62J.23, subds. 1 – 2 (2013); *see also* 42 U.S.C.S. § 1320a-7b(b)(2)(2013).

44. A contract may be voided if a party to the contract knowingly and intentionally violated the anti-kickback statute of Minnesota.

9

45. In at least one area of Minnesota law, medical services or supplies that violate the Minnesota anti-kickback statute are per se not compensable. *See* Minn. R. 5221.0700, subp. 1a (2013).

46. Defendants' schemes and conspiracies involved misrepresenting the medical necessity of MRI scans and/or receiving or paying kickbacks for MRI scans.

47. Following soft tissue injuries to the cervical, thoracic or lumbar spine, an MRI is appropriate if there are objective, physical findings of neurological compromise (myelopathy or radiculopathy) such as radiation of pain along a specific dermatome, abnormal deep tendon reflex, muscle weakness, or muscle atrophy. MRI is also appropriate where metastasis may be a concern, such as in a case of patient who has a history of cancer. In the absence of the above criteria, MRI imaging in the initial evaluation of spinal pain is inappropriate, ill-advised, non-productive, and imprudent.

48. Defendant MDI retains close relationships with a network of medical practitioners that includes the Defendant Clinics and Chiropractors.

49. Defendants MDI and Appleman begin nourishing relationships with chiropractors as soon as possible. For example, Defendant Appleman has allowed chiropractic students at local chiropractic colleges to vacation at Defendant Appleman's property in the Cayman Islands.

50. Defendants MDI and Appleman initiate new relationships with practicing chiropractors by visiting chiropractors at their offices and providing them with gift baskets, flowers or similar items.

51.  Defendants Appleman and MDI also send letters to potential referral sources.  (Ex. 9).  The letters are addressed to the doctors or chief financial officers of the clinics and entice the recipients with the possibility of "Increased Revenues to Clinic…."  The letters refer to "Our Reading Radiologist" and offer to provide "MRI Education (sic)" to "the doctors."  The letters clarify that Defendant MDI "will bring the coach to your office" but that the doctors or clinics do not "need a separate electrical hookup…."  The final benefit highlighted by Defendants MDI and Appleman is the assertion that "[n]o one beats our lease pricing!"

52.  Defendants MDI and Appleman then enter into a "Confidential Rental Agreement" with each willing clinic and/or chiropractor, including the Defendant Clinics and Chiropractors.  (Ex. 3).

53.  The "Confidential Rental Agreement" entered into by Defendants MDI and Appleman with each Defendant Clinic and/or Chiropractor claims that Defendant MDI is reimbursing the Defendant Clinics for the "leasing" of office items that include, but are not limited to, telephones, fax machines, computers copiers, and internet access.

54.  However, Defendant MDI does not actually "lease" the office items as Defendant MDI conducts its scans in a self-sufficient MRI trailer.  Multiple insureds-claimants who have undergone MRI scans with Defendant MDI have not observed any electrical connections between Defendant MDI and the clinics of the Defendant Clinics and Chiropractors.  At least one insured-claimant hypothesized that the MDI trailer uses its own power generator.  In other words, Defendant MDI does not need to reimburse the

Defendant Clinics and Chiropractors for the use of their facilities as the MDI trailer is self-sufficient.

55.  Despite purporting to reimburse the Defendant Clinics and Chiropractors for the leasing of their premises, each "Confidential Rental Agreement" is merely a pretext for paying kickbacks to the Defendant Clinics and Chiropractors for the referrals of patients.

56.  Defendants MDI and Appleman also encourage the Defendant Clinics and Chiropractors to refer more scans.  For example, an excerpt from the internal procedures for Defendant MDI states, "All doctors who scanned for the day with 2 or more scans get a check regardless of insurance." (*See* Ex. 4).

57.  Similarly, Defendant MDI may cancel a scanning site if there is an "insufficient" amount of scans scheduled for the day.

58.  Defendant MDI also concurrently records the "number of scans and rent amount" in an Excel spreadsheet that lists the referring doctors.

59.  While purportedly reimbursing the Defendant Clinics and Chiropractors for "rent" or "leases[,]" the scans for many of the patients of the Defendant Clinics and Chiropractors occur at various locations other than the offices of the Defendant Clinics and Clinic Owners.

60.  For example, the scans for Defendants Assiat Boke Chiropractic, P.A., and Assiat Boke, D.C., occur at 5685 Duluth Street in Golden Valley, Minnesota 55422.  This address, however, is the parking lot for an outlet mall.  Further, the address for Defendant Assiat Boke Chiropractic is 5851 Duluth Street in Golden Valley, Minnesota.  In other words, Defendants MDI and Appleman are paying Defendants Assiat Boke, D.C., and

Assiat Boke Chiropractic, P.A., "rent" for a parking lot that does not even abut Assiat Boke Chiropractic, P.A.

61. Similarly, Defendants Steve Poser, D.C., and Affinity Health Chiropractic are paid "rent" for Defendants MDI and Appleman to park their trailer at 4801 Welcome Avenue North, Crystal, Minnesota 55429.  However, Defendants Steve Poser and Affinity Health do not own the property at 4801 Welcome Avenue North, Crystal, Minnesota 55429, and Defendant Poser does not operate a clinic out of the 4801 Welcome address.  Further, other chiropractors unaffiliated with Defendants Steve Poser, D.C., and Affinity Health Chiropractic also receive "rent" for scans conducted at 4801 Welcome Avenue North, Crystal, MN 55429.

62. Defendant Richard Stoffels, D.C., received "rent" from Defendant MDI even though Defendant MDI parked its trailer on a public street when it scanned patients for Defendant Richard Stoffels, D.C.

63. In seeking reimbursement for MRI scans, Defendants have mailed or transmitted (or caused to be mailed or transmitted) health insurance claim forms that fraudulently represent the referrals and MRI scans as compensable under Minnesota law even though the referrals are not medically necessary and/or violate the anti-kickback statutes and are performed by a diagnostic facility that is in knowing and intentional violation of the Corporate Practice of Medicine Doctrine.

**F. Representative Examples of Defendants' Frauds**

64. While Defendants characterize the MRI scans as medically necessary, many of the records from the Defendant Clinics and Clinic Owners do not even reference the results

of the MRI scans after the scans have been conducted.  For example, a scan conducted by

Defendant MDI on August 9, 2011 in claim no. 1019346158-1-12 occurred within six

days of the patient's accident.  Despite the urgency implied by the haste of the MRI

referral, the patient's chiropractic records from Defendant Elite Chiropractic, PLLC, fail

to discuss the MRI referral or results.

65.  In other cases, the Defendant Clinics and Clinic Owners refer the

insureds/claimants for MRI scans at the conclusions of their treatments with the

Defendant Clinics and Chiropractors.  In claim no. 1014700548-1-2, for example,

Defendants Assiat Boke and Assiat Boke Chiropractic, Inc., referred their patient for a

scan with Defendant MDI on February 9, 2010 even though the patient had essentially

been discharged from any further chiropractic treatment.

66.  Defendant MDI routinely performed MRI scans within days of the

insured/claimant undergoing initial examinations with the referring chiropractors.  In

fact, Defendant MDI performed nearly fifty-percent of the scans of Plaintiff's insureds

referred to it from January 1, 2008 until May 22, 2013 within one month of the insureds'

initial chiropractic evaluations.

67.  Internal documents from Defendant MDI reveal a sampling of the amount of

kickbacks paid by Defendants MDI and Appleman to referring chiropractors.  (*See* Ex. 5).

68.  Internal documents also reveal that Defendants Appleman and MDI maintain a

"Chior (sic) Roster" that lists the chiropractors that receive kickbacks.  Attached as

Exhibit 10 is one chiropractor roster from 2011.

14

69. From January of 2011 until November of 2011, Defendants MDI and Appleman paid $221,800.00 in kickbacks to chiropractors on its "Chiro (sic) Roster" from 2011. The amount of $221,800.00 included kickbacks to the Defendant Clinics and Chiropractors.

70. During the time period of January of 2011 until November of 2011, Defendants Steven Poser, D.C., and Elite Health Chiropractic, P.C. or Affinity Health Chiropractic, P.A., received at least $9,300.00 in kickbacks from Defendants MDI and Appleman. The amount of $9,300.00 included kickbacks for scans of Plaintiff's insureds/claimants that Defendant MDI performed on February 16; April 5; May 18; July 14; August 3; August 22; and on or about August 9, 2011.

71. From January of 2011 until November of 2011, Defendants Assiat Boke, D.C., and Assiat Boke Chiropractic, Inc., received at least $4,800.00 in kickbacks from Defendants MDI and Appleman. The amount of $4,800.00 included kickbacks for scans of Plaintiff's insureds/claimants that Defendant MDI performed on July 24 and November 11, 2011.

72. During the time period of January of 2011 until November of 2011, Defendants Richard Ottomeyer, D.C., and Ottomeyer Clinics received at least $7,700.00 in kickbacks from Defendants MDI and Appleman. The amount of $7,700.00 included a kickback for the scan of Plaintiff's insured/claimant that Defendant MDI performed on June 17, 2011.

73. Defendants Leo R. Gonsowski III, D.C., and Arch Chiropractic, P.C., received at least $8,000.00 in kickbacks from Defendants MDI and Appleman. The amount of

$8,000.00 included kickbacks for the scans of Plaintiff's insureds/claimants performed by Defendant MDI on July 26, August 5, and August 11, 2011.

74. Defendants Danial Hall, D.C., Lois Hall, D.C., and Hall Family Chiropractic received at least $2,800.00 in kickbacks from Defendants MDI and Appleman. The amount of $2,800.00 included a kickback for the scans of Plaintiff's insured/claimant performed by Defendant MDI on October 6, 2011.

75. Defendants Steve Karg, D.C., and Rockford Chiropractic received at least $9,600.00 in kickbacks from Defendants MDI and Appleman. The amount of $9,600.00 included a kickback for the scan of Plaintiff's insured/claimant performed by Defendant MDI on January 25, 2011.

76. Defendants John Valentini, D.C., Michael B. Shinder, D.C., and Four Seasons Chiropractic, Ltd., received at least $5,600.00 in kickbacks from Defendants MDI and Appleman from January of 2011 to November of 2011. The amount of $5,600.00 included kickbacks for the scans of Plaintiff's insureds/claimants performed by Defendant MDI on February 8 and September 23, 2011.

77. Defendants Mateus Ferraz- Souza, D.C., and Universal Care Clinics received at least $3,500.00 in kickbacks from Defendants MDI and Appleman from January of 2011 to November of 2011. The amount of $3,500.00 included a kickback for the scan of Plaintiff's insured/claimant performed by Defendant MDI on March 14, 2011.

78. Defendants Daniel Anderson, D.C., and Anderson Chiropractic Clinic received at least $2,800.00 in kickbacks from Defendants MDI and Appleman from January of 2011 to November of 2011.

79.  Defendants Jeff Danielson, D.C., and Northern Life received at least $7,200.00 in kickbacks from Defendants MDI and Appleman from January of 2011 to November of 2011.

80.  Defendants Andrea Ruhland, D.C., and Lakeville Family Chiropractic received at least $1,600.00 in kickbacks from Defendants MDI and Appleman from January of 2011 to November of 2011.  The amount of $1,600.00 included kickbacks for the scans of Plaintiff's insureds/claimants performed by Defendant MDI on January 13 and November 4, 2011.

81.  Defendants Duylinh Nguyen, D.C., and Optimum Chiropractic received at least $15,400.00 in kickbacks from Defendants MDI and Appleman from January of 2011 to November of 2011.  The amount of $15,400.00 included kickbacks for the scans of Plaintiff's insureds/claimants performed by Defendant MDI on April 18 and May 9, 2011.

82.  Defendants Richard Stoffels, D.C., and Stoffels Chiropractic received at least $2,100.00 in kickbacks from Defendants MDI and Appleman from January of 2011 to November of 2011.

83.  Defendants Steven Jackson, D.C., and Jackson Chiropractic received at least $700.00 in kickbacks from Defendants MDI and Appleman from January of 2011 to November of 2011.

84.  Defendants Allen Tran, D.C., and Prestige Chiropractic received at least $2,800.00 in kickbacks from Defendants MDI and Appleman from January of 2011 to November of 2011.

85.  Defendants Dennis Boerjan, D.C.,  and Advance Chiropractic Clinic received at least $4,800.00 in kickbacks from Defendants MDI and Appleman from January of 2011 to November of 2011.

86.  Defendants Carron Perry, D.C., Candace Salmi, D.C., and Bodymind Chiropractic Center received at least $3,500.00 in kickbacks from Defendants MDI and Appleman from January of 2011 to November of 2011.

87.  Defendants Brent Kvam, D.C., and Healthstar Chiropractic received at least $700.00 in kickbacks from Defendants MDI and Appleman from January of 2011 to November of 2011.

88.  Defendants Stephen DeHaven, D.C., and DeHaven Chiropractic received at least $2,100.00 in kickbacks from Defendants MDI and Appleman from January of 2011 to November of 2011.

89.  Defendants Joseph Virga, D.C., Kathleen Virga, D.C., and Virga Chiropractic Clinic, P.A. received at least $2,400.00 in kickbacks from Defendants MDI and Appleman from January of 2011 to November of 2011.

90.  Defendants Mark Reeve, D.C., and Reeve Chiropractic received at least $3,200.00 in kickbacks from Defendants MDI and Appleman from January of 2011 to November of 2011.

91.  Defendants David Atkinson, D.C., and Boulevard Chiropractic Clinic received at least $1,700.00 in kickbacks from Defendants MDI and Appleman from January of 2011 to November of 2011.

92.  Defendants Douglas Edwards, D.C., and Albert Lea Chiropractic received at least $800.00 in kickbacks from Defendants MDI and Appleman from January of 2011 to November of 2011.

93.  Defendants Michael Kilpatrick, D.C., and New Prague Family Chiropractic received at least $1,400.00 in kickbacks from Defendants MDI and Appleman from January of 2011 to November of 2011.

94.  Defendants Lowell Magelssen, D.C., and First Chiropractic received at least $3,200.00 in kickbacks from Defendants MDI and Appleman from January of 2011 to November of 2011.

95.  Defendants Robin Harstad, D.C., Overstad Chiropractic, P.A., received at least $800.00 in kickbacks from Defendants MDI and Appleman from January of 2011 to November of 2011.

96.  Defendants Jeff Schneider, D.C., and Hillside Chiropractic Clinic, Inc., received at least $4,950.00 in kickbacks from Defendants MDI and Appleman from January of 2011 to November of 2011.

97.  Defendants Dorothy Saunders, D.C., a/k/a Dorothy O'Connor, D.C., and Team Chiropractic & Wellness, Ltd., received at least $700.00 in kickbacks from Defendants MDI and Appleman from January of 2011 to November of 2011.  The amount of $700.00 included a kickback for a scan of Plaintiff's insured/claimant that occurred on November 10, 2011.

98.  Defendants Guy Caspers, D.C., and Caspers Chiropractic received at least $2,100.00 in kickbacks from Defendants MDI and Appleman from January of 2011 to

November of 2011. The amount of $2,100.00 included kickbacks for the scans of

Plaintiff's insureds/claimants performed by Defendant MDI on April 20 and October 13,

2011.

99. Defendants Steven Moe, D.C., and Integrated Health & Wellness, Ltd., received at

least $4,900.00 in kickbacks from Defendants MDI and Appleman from January of 2011

to November of 2011. The amount of $4,900.00 included kickbacks for the scans of

Plaintiff's insureds/claimants performed by Defendant MDI on or about September 22,

2011.

100.      Defendants Shaun Gifford, D.C., and Pro Adjuster Chiropractic received at

least $5,600.00 in kickbacks from Defendants MDI and Appleman from January of 2011

to November of 2011. The amount of $5,600.00 included kickbacks for the scans of

Plaintiff's insureds/claimants performed by Defendant MDI on July 22, 2011.

101.      Defendants Brent Scheideman, D.C., and Scheideman Chiropractic & Body

Shop, Inc., received at least $2,475.00 in kickbacks from Defendants MDI and Appleman

from January of 2011 to November of 2011. The amount of $2,475.00 included a

kickback for the scan of Plaintiff's insured/claimant performed by Defendant MDI on

July 13, 2011.

102.      Defendants Kathleen Bloom, D.C., and Bloom Chiropractic Center, P.A.,

received at least $3,200.00 in kickbacks from Defendants MDI and Appleman from

January of 2011 through November of 2011. The amount of $3,200.00 included a

kickback for the scan of Plaintiff's insured/claimant performed by Defendant MDI on

March 30, 2011.

103. Defendants Scot Pearson, D.C., and Pearson Chiropractic Clinic received at least $700.00 in kickbacks from Defendants MDI and Appleman from January of 2011 through November of 2011. The amount of $700.00 included a kickback for the MRI scan of Plaintiff's insured/claimant that Defendant MDI performed on March 29, 2011.

104. Defendants Aaron Kirking, D.C., and Spinal Health Chiropractic received at least $900.00 in kickbacks from Defendants MDI and Appleman from January of 2011 to November of 2011. The amount of $900.00 included a kickback for the MRI scan of Plaintiff' insured/claimant that Defendant MDI performed on February 4, 2011.

105. Defendants Eric Brandt, D.C., and Riverside Family Chiropractic Chartered received at least $700.00 in kickbacks from Defendants MDI and Appleman from January of 2011 to November of 2011.

106. Defendants Stephen L. Engel, D.C., and Engel Chiropractic, P.A., received at least $5,400.00 in kickbacks from Defendants MDI and Appleman from January of 2011 to November of 2011. The amount of included a kickback for the MRI scans of Plaintiffs' insureds/claimants that Defendant MDI performed on January 11, February 7, February 24, and July 25, 2011.

107. Four of the chiropractors who entered into "Confidential Rental Agreements" with Defendants MDI and Appleman have entered into "Agreements for Corrective Action" with the Minnesota Board of Chiropractic Examiners. (*See* Ex. 6). The "Agreements for Corrective Action" found that the chiropractors violated Minnesota law by each entering into a "Confidential Rental Agreement" with Defendants MDI and Appleman.

## VI.  COUNTS

### COUNT 1 –KNOWING AND INTENTIONAL VIOLATION OF THE ANTI-KICKBACK STATUTES
### (ALL DEFENDANTS)

108.   Plaintiffs re-allege, re-plead and incorporate by reference all paragraphs set forth above as if fully set forth herein.

109.   Minnesota law prevents all persons in the state from receiving any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind, in return for referring an individual to a person for the furnishing of any item or service for which payment may be made under any benefits program.  *See* Minn. Stat. § 62J.23, subds. 1 – 2 (2013); *see also* 42 U.S.C.S. § 1320a-7b(b)(1)(2013).

110.   Minnesota law also prevents all persons in the state from knowingly and willfully offering or paying any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person to refer an individual to a person for the furnishing of any item or service for which payment may be made under any benefits program.  *See* Minn. Stat. § 62J.23, subds. 1 – 2 (2012); *see also* 42 U.S.C.S. § 1320a-7b(b)(2)(2012).

111.   A contract may be voided if a party to the contract knowingly and intentionally violated the anti-kickback laws.

112. Further, medical services or supplies paid pursuant to kickbacks are per se not compensable in at least one area of Minnesota law.  *See* Minn. R. 5221.0700, subp. 1a (2013).

22

113.   The Defendant Clinics and Chiropractors knowingly and willfully received kickbacks in the form of "rent" after referring automobile accident victims to Defendant MDI for MRI scanning services.  The Defendant Clinics and Chiropractors knew payment would be made by insurers such as Plaintiffs because the aforementioned defendants had already submitted medical claims to Plaintiff on behalf of the referred patients.

114.   Defendants MDI and Appleman knowingly and willfully paid kickbacks to the Defendant Clinics and Chiropractors to induce them to refer patients for MRI scans. Defendants MDI and Appleman knew payment would be made by insurers such as Plaintiffs because each patient registration form of Defendant MDI contained the relevant insurer for each patient.

115.   The knowing and intentional violations by Defendants of the law against kickbacks is proven in part by the characterization of the kickbacks as "rent[,]" which reveals an intentional attempt to conceal that Defendant MDI actually paid for patients and that the Defendant Clinics and Chiropractors accepted  kickbacks for patient referrals.

116.   The knowing and intentional violation of the law against kickbacks is also proven in part by the acceptance of "rent" payments by the Defendant Clinics and Chiropractors even though the Defendant Clinics and Chiropractors did not rent any space or lease any office equipment to Defendants MDI and Appleman.  Assuming arguendo that some of the Defendant Clinics and Chiropractors rented office space or

leased office supplies, these Defendant Clinics and Chiropractors received "rent" far exceeding the fair market value attributable to parking spaces or the use of any utilities.

117.   As the illegality of Defendants' kickbacks so tainted the transactions between Plaintiffs and Defendants MDI and Appleman, it would be contrary to public policy to require Plaintiffs to reimburse Defendants MDI and Appleman for MRI scans.  Enforcing the contracts would reward Defendants for their clear violations of law.

118.   Plaintiffs therefore request that the Court declare Plaintiffs have no legal obligation to compensate Defendants MDI and Appleman for any outstanding medical expenses.

### COUNT 2– KNOWING AND INTENTIONAL VIOLATION OF THE CORPORATE PRACTICE OF MEDICINE DOCTRINE (DEFENDANTS MDI AND APPLEMAN)

119.   Plaintiffs re-allege, re-plead and incorporate by reference all paragraphs set forth above as if fully set forth herein.

120.   Pursuant to the Minnesota Supreme Court's opinion in *Granger* v. *Adson,* 250 N.W. 722 (1933), the State of Minnesota recognizes the Corporate Practice of Medicine Doctrine, which requires a healthcare provider to actually be owned by a medically licensed individual.

121.   Defendant MDI is and at all times has been owned by Defendant Appleman, who is a layman.

122.   Defendant MDI engages the services of ProScan, including Dr. Stephen Pomeranz, M.D., and Dr. Bryan K. Hosler, D.C., D.A.C.B.R., to interpret the scans performed on the patients of Defendant MDI.

123.  The doctors of ProScan Imaging engage in the "practice of healing" by engaging in, or holding out to the public as being engaged in, the diagnosis, analysis, treatment, correction and cure of physical injuries and ailments.

124.  The ProScan doctors are members of state-licensed professions.

125.  The ProScan doctors underwent significant training and education before being able to perform professional interpretations of diagnostic images.

126.  As doctors who owe duties to their patients, the ProScan doctors should enjoy unfettered independent medical judgments without the interference of a lay corporation such as Defendant MDI.

127.  Defendant MDI paid or pays ProScan for its interpretations of MRI scans but bills Plaintiff for the rendering of the medical interpretations.

128.  The arrangement between Defendant MDI and ProScan violates the Corporate Practice of Medicine Doctrine as Defendant MDI is an illegal "middleman" between doctor and patient.

129.  Additionally, the performance of an MRI scan and the interpretation of the scan are so inextricably intertwined that one cannot be performed without the other.  Thus, the scanning of patients and interpretations of those scans are merely two steps in an overall process that constitutes the practice of medicine.  The participation of a lay corporation, i.e., Defendant MDI, in the scanning and diagnosis of patients therefore constitutes the Corporate Practice of Medicine.

130.  Additionally, the MDI technicians engage in the "practice of healing" by participating in the process of diagnosing and analyzing the injuries of patients.

131.   Upon information and belief, the MDI technicians are members of the American Registry of Radiologic Technologists and must maintain their registrations.  Upon information and belief, the MDI technicians have passed exams approved by the Minnesota Commissioner of Health and are required to maintain continuing education credits.

132.   As described by Defendant Appleman, the MDI technicians perform a "highly specialized job" requiring "at least four months training" on the machines used by Defendant MDI.  Upon information and belief, the MDI technicians also obtained post-secondary education and need to maintain continuing education credits.

133.   The MDI technicians enjoy independent, unfettered judgment as the entire scanning process occurs without the personal supervision of a licensed medical doctor.

134.   As the MDI technicians engage in the practice of medicine and Defendant MDI is a lay-owned facility, Defendants MDI and Appleman have violated the Corporate Practice of Medicine Doctrine.

135.   The violations by Defendants MDI and Appleman are intentional as Defendant Appleman is an individual who has demonstrated his knowledge of the laws by representing himself in a multitude of legal proceedings.  Further, the promotional materials for Defendant MDI do not reveal the lay ownership of the mobile clinic.  Such intentional concealment of the lay ownership of Defendant MDI further demonstrates a knowing and intentional violation of the Corporate Practice of Medicine Doctrine.

136.   As a result of the knowing and intentional violation of the Minnesota Corporate Practice of Medicine Doctrine by Defendants MDI and Appleman, any and all billings

and/or invoices for MRI scans billed by Defendants MDI and Appleman are null, void and uncollectible.

### COUNT 3 – VIOLATIONS OF THE RICO ACT – 18 U.S.C. § 1962(c)
**(DEFENDANTS MDI; APPLEMAN; STEVE POSER, D.C.; ELITE CHIROPRACTIC, P.C.; AFFINITY HEALTH CHIROPRACTIC, P.A.; ASSIAT BOKE, D.C., ASSIAT BOKE CHIROPRACTIC, INC.; RICHARD OTTOMEYER, D.C.; OTTOMEYER CLINICS, PLLC; DANIAL HALL, D.C.; LOIS HALL; D.C.; HALL FAMILY CHIROPRACTIC; STEVE KARG, D.C.,; ROCKFORD CHIROPRACTIC; JOHN VALENTINI, D.C.; MICHAEL SHINDER, D.C.; FOUR SEASONS CHIROPRACTIC, LTD.; MATEUS FERRAZ-SOUZA, D.C.; UNIVERSAL CARE CLINICS, LLC; DANIEL ANDERSON, D.C.; ANDERSON CHIROPRACTIC; JEFFREY DANIELSON, D.C.; NORTHERN LIFE CHIROPRACTIC; DUYLINH NGUYEN, D.C.; OPTIMUM CHIROPRACTIC; LOWELL MAGELSSEN, D.C.; FIRST CHIROPRACTIC – SHOREVIEW; DENIS BOERJAN, D.C.; ADVANCE CHIROPRACTIC CLINIC; DENIS BOERJAN, LLC; STEPHEN L. ENGEL, D.C.; AND ENGEL CHIROPRACTIC, P.A.)**

137.  Plaintiffs re-allege, re-plead and incorporate by reference all paragraphs set forth above as if fully set forth herein.

138.  At all relevant times, each Plaintiff was a "person" within the meaning of 18 U.S.C § 1961(3) and 1964(c).

139.  At all relevant times, Defendants MDI; Michael A. Appleman; Steven Poser, D.C.; Affinity Health Chiropractic, P.A.; Elite Chiropractic, P.C.; Affinity Health Chiropractic, P.A.; Assiat Boke, D.C.; Assiat Boke Chiropractic, Inc.; Danial Hall, D.C.; Lois Hall, D.C.; Hall Family Chiropractic; Steve Karg, D.C.; Rockford Chiropractic; Duylinh Nguyen, D.C.; Optimum Chiropractic; Richard Ottomeyer, D.C.; Ottomeyer Chiropractic; Mateus Souza, D.C.; Universal Care Clinics, LLC; Daniel Anderson, D.C.; Anderson Chiropractic; John Valentini, D.C.; Michael Shinder, D.C.; Four Seasons Chiropractic; Jeffrey Danielson, D.C.; Northern Life Chiropractic; Lowell Magelssen,

D.C.; First Chiropractic – Shoreview; Denis Boerjan, D.C.; Advance Chiropractic Clinic;

Denis Boerjan, LLC; Stephen L. Engel, D.C.; and Engel Chiropractic, P.A. (hereinafter

collectively "the Count 3 Defendants"), were "persons" within the meaning of 18 U.S.C

§ 1961(3) and 1962(c).

**Conduct**

140. Defendants MDI and Appleman conducted and/or participated in the operation of

multiple enterprises by conducting medically unnecessary MRI scans and/or

systematically paying illegal kickbacks to Defendants Steven Poser, D.C.; Affinity

Health Chiropractic, P.A.; Elite Chiropractic, P.C.; Affinity Health Chiropractic, P.A.;

Assiat Boke, D.C.; Assiat Boke Chiropractic, Inc.; Danial Hall, D.C.; Lois Hall, D.C.;

Hall Family Chiropractic; Steve Karg, D.C.; Rockford Chiropractic; Duylinh Nguyen,

D.C.; Optimum Chiropractic; Richard Ottomeyer, D.C.; Ottomeyer Chiropractic; Mateus

Souza, D.C.; Universal Care Clinics, LLC; Daniel Anderson, D.C.; Anderson

Chiropractic; John Valentini, D.C.; Michael B. Shinder, D.C.; Four Seasons Chiropractic;

Jeffrey Danielson, D.C.; Northern Life Chiropractic; Lowell Magelssen, D.C.; First

Chiropractic – Shoreview; Denis Boerjan, D.C.; Advance Chiropractic Clinic; Denis

Boerjan, LLC; Stephen L. Engel, D.C.; and Engel Chiropractic, P.A. (hereinafter "the

Count 3 Clinics and Chiropractors"), as reimbursements for MRI referrals.

141. The Count 3 Clinics and Chiropractors all conducted and/or participated in the

operation of their respective enterprises by issuing medically unnecessary MRI referrals

and/or accepting kickbacks for MRI referrals.

**Multiple Enterprises**

28

142. Defendants MDI and Appleman formed multiple association-in-fact enterprises with the Count 3 Clinics and Chiropractors.

143. Defendants MDI, Appleman, Steven Poser, D.C., Elite Chiropractic, P.C., and Affinity Health Chiropractic, P.A., are an association-in-fact enterprise as that term is defined in 18 U.S.C. § 1961(4).

144. Defendants MDI, Appleman, Assiat Boke, D.C., and Assiat Boke Chiropractic, Inc., are an association-in-fact enterprise as that term is defined in 18 U.S.C. § 1961(4).

145. Defendants MDI, Appleman, Danial Hall, D.C., Lois Hall, D.C., and Hall Family Chiropractic are an association-in-fact enterprise as that term is defined in 18 U.S.C. § 1961(4).

146. Defendants MDI, Appleman, Steve Karg, D.C., and Rockford Chiropractic are an association-in-fact enterprise as that term is defined in 18 U.S.C. § 1961(4).

147. Defendants MDI, Appleman, Duylinh Nguyen, D.C., and Optimum Chiropractic are an association-in-fact enterprise as that term is defined in 18 U.S.C. § 1961(4).

148. Defendants MDI, Appleman, Richard Ottomeyer, D.C., and Ottomeyer Chiropractic are an association-in-fact enterprise as that term is defined in 18 U.S.C. § 1961(4).

149. Defendants MDI, Appleman, Mateus Ferraz-Souza, D.C., and Universal Care Clinics, LLC, are an association-in-fact enterprise as that term is defined in 18 U.S.C. § 1961(4).

150. Defendants MDI, Appleman, Daniel Anderson, D.C., and Anderson Chiropractic are an association-in-fact enterprise as that term is defined in 18 U.S.C. § 1961(4).

151. Defendants MDI, Appleman, John Valentini, D.C., Michael B. Shinder, D.C., and Four Seasons Chiropractic are an association-in-fact enterprise as that term is defined in 18 U.S.C. § 1961(4).

152.  Defendants MDI, Appleman, Jeffrey Danielson, D.C., and Northern Life Chiropractic are an association-in-fact enterprise as that term is defined in 18 U.S.C. § 1961(4).

153. Defendants MDI, Appleman, Lowell Magelssen, D.C.; and First Chiropractic – Shoreview are an association-in-fact enterprise as that term is defneined in 18 U.S.C. § 1961(4).

154. Defendants MDI, Appleman, Denis Boerjan, D.C.; Advance Chiropractic Clinic; and Denis Boerjan, LLC are an association-in-fact enterprise as that term is defined in 18 U.S.C. § 1961(4).

155. Defendants MDI; Appleman; Stephen L. Engel, D.C.; and Engel Chiropractic, P.A., are an association-in-fact enterprise as that term is defined in 18 U.S.C. § 1961(4).

156. The Count 3 Defendants all conducted and/or participated in their respective enterprises for the common purposes of receiving economic benefits after the fraudulent billings of Plaintiff and other insurers for medically unnecessary MRI referrals and/or MRI referrals issued pursuant to kickbacks.

157. There are relationships among those associated each enterprise.  Defendant MDI, which is owned by Defendant Appleman, receives MRI referrals from each Count 3 Clinic and Chiropractor in exchange for kickbacks.  In turn, the Count 3 Clinics and Chiropractors each receive illegal kickbacks for their referrals to Defendants MDI and

Appleman.  The Count 3 Chiropractors are each associated with the Count 3 Clinics in their respective enterprises because the Count 3 Chiropractors either work for or own the Count 3 Clinics that participated in their respective enterprises.

158.  There is a continuity of personnel in each enterprise as the Count 3 Clinics and Chiropractors repeatedly refer patients to Defendant MDI for MRI scans, and Defendants MDI and Appleman repeatedly pay kickbacks to the Count 3 Clinics and Chiropractors. Further, there is a continuity of personnel in each enterprise as the Count 3 Chiropractors either work for or own the Count 3 Clinics that participated in their respective enterprises.

159.  At all relevant times, the activities of the enterprises affected the interstate transmissions of information and money between Plaintiffs in California, Ohio, Delaware, and/or Florida, and the Count 3 Defendants in Minnesota or Wisconsin.

**The Patterns of Racketeering Activities**

160.  The patterns of racketeering activities committed by the Count 3 Defendants consist of repeated violations of the federal mail fraud and wire fraud statutes.

161.  The Count 3 Defendants devised  schemes to defraud Plaintiffs by requesting reimbursement for medically unnecessary scans and/or scans incentivized by the payment of kickbacks from Defendants MDI and Appleman to the Count 3 Clinics and Chiropractors.  Each enterprise presented medically unnecessary scans and/or scans paid pursuant to kickback schemes as compensable under Minnesota law even though Plaintiffs didn't need to reimburse Defendants for medically unnecessary scans or MRI scans that violated the anti-kickback statute.

31

162. The Count 3 Defendants specifically intended to defraud Plaintiffs, which is evidenced in part by the aforementioned defendants representing MRI scans as medically necessary when such scans were not warranted and/or attempting to hide their kickbacks by categorizing them as "rent."  In addition, the Count 3 Defendants deprived Plaintiffs' insureds of their rights to the defendants' honest services by subjecting Plaintiffs' insureds to medically unwarranted and/or fiscally motivated treatment.

163. The interstate natures of these schemes (i.e., the submissions of claims from Minnesota to companies in California, Delaware, Florida, and/or Ohio) made it reasonably foreseeable that the mail and/or interstate wire communications would be used.

164. The Count 3 Defendants in fact used the United States mail and/or interstate wire communications to submit documents to Plaintiffs in support of their respective claims as listed in Exhibit 7.   Defendants MDI and Appleman in fact used the United States mail to send checks for kickbacks to the Count 3 Clinics and Chiropractors.  Plaintiffs in fact used the United States mail and/or interstate wire communications to reimburse Defendants MDI and Appleman for the fraudulent MRI scans.

165. The predicate acts of each enterprise are related because the predicate acts of each enterprise involved highly similar conduct and outcomes.  The predicate acts involved the Count 3 Defendants repeatedly submitting or causing to be submitted insurance claims for reimbursements after Defendant MDI performed medically unnecessary MRI scans and/or MRI scans catalyzed by kickbacks.  After each predicate

act, Defendants MDI and Appleman then paid the Count 3 Clinics and Chiropractors for patient referrals.

166. The Count 3 Defendants' predicate acts involved the same or similar purposes (to provide fraudulent insurance claims information to Plaintiffs), results (payments from Plaintiffs to Defendants MDI and Appleman and payments from Defendants MDI and Appleman to the Count 3 Clinics and Chiropractors), participants (the Count 3 Defendants), victims (insurance companies and their insureds, including Plaintiffs and their insureds), methods of commission (entering into "Confidential Rent Agreements" and reimbursing and being reimbursed for the receipts and referrals of medically unnecessary and/or financially incentivized kickbacks), and are interrelated rather than isolated events (the Count 3 Defendants repeatedly engaged in the activities and possibly still engage in the submissions of fraudulent insurance claims).

167. The related predicate acts of each of the nine enterprises satisfy closed-end continuity because the predicate acts of each enterprise occurred over substantial periods of time. (*See* Ex. 7).

168. The predicate acts of each enterprise pose distinct threats of long-term racketeering activities. Specifically, the mail and wire frauds consist of facially valid medical referrals that are, in reality, catalyzed by private agreements between Defendants MDI and Appleman and the Count 3 Clinics and Chiropractors. As these agreements are made in private and there are no requirements to file such contracts for public view, the predicate acts threaten repetition in to the future without the filing of this lawsuit. Defendant Appleman is still, as of August of 2013, actively trying to recruit chiropractors

for his mobile diagnostic enterprises with promises of "Additional Revenues" to each chiropractor's practice. (*See* Ex. 9).

169. The above-described predicate acts also constitute regular ways that the Count 3 Defendants conducted their businesses. Through the use of kickback agreements, Defendants MDI and Appleman ensured medical referrals from the Count 3 Clinics and Chiropractors. Conversely, the Count 3 Clinics and Chiropractors increased their revenues under their kickback agreements with Defendants MDI and Appleman. These business practices, which involved the injections of mail and wire fraud into the otherwise legitimate system of medical referrals and billing, constitute a regular way that the defendants in each enterprise conducted their businesses.

**Injuries to Plaintiff**

170. The misrepresentations made by the Count 3 Defendants to Plaintiffs and their insureds factually and proximately caused Plaintiffs to pay the aforementioned defendants for medically unnecessary MRI scans and/or MRI scans that violated the anti-kickback statute. The damages suffered by Plaintiffs are attributable to the misrepresentations of Defendants MDI and Appleman because Plaintiffs must rely on the facial validity of insurance claims in deciding whether to pay requests for reimbursements. This is especially true in the no-fault context, which requires insurers to pay or deny claims in a statutorily limited amount of time.

171. Additionally, Plaintiffs' insureds and no-fault arbitrators relied on the misrepresentations of the Count 3 Defendants with respect to the compensability of the

34

MRI referrals.  The misrepresentations made by the Count 3 Defendants also forced

Plaintiffs into mandatory no-fault arbitration.

172.  By reason of the violation of 18 U.S.C. § 1962(c) by the Count 3 Defendants,

Plaintiffs were injured in their businesses or properties. *See* 18 U.S.C. § 1964(c).

Plaintiffs are therefore entitled to recover from the Count 3 Defendants the costs of this

suit, including reasonable attorneys' fees, and three times their damages (as determined at

trial) suffered by the defendants' participations in their respective enterprises.

## COUNT 4 – COMMON LAW FRAUD
### (DEFENDANTS MDI AND APPLEMAN)

173.  Plaintiffs re-allege, re-plead and incorporate by reference all paragraphs set forth

above as if fully set forth herein.

174.  In seeking reimbursement for MRI scans, Defendants MDI and Appleman

presented health insurance claim forms to Plaintiffs.  By submitting each form,

Defendants MDI and Appleman represented that each MRI scan was compensable under

Minnesota law.

175.  The representations regarding the compensability of the submitted health claim

forms were false as the submitted forms sought reimbursement for medically unnecessary

care, for scans that violated anti-kickback statutes and/or for medical treatment rendered

by a lay-owned medical facility.

176.  The representations dealt with the past facts of whether the MRI scan referrals

had been issued out of medical necessity.  Further, the representations dealt with a

present fact, i.e., the ability of Defendants MDI and Appleman to be reimbursed for the

MRI scans.

177.   The misrepresentations were material because, under Minnesota law, an insurer

does not need to compensate a medical provider or diagnostic facility for medically

unnecessary treatment; treatment rendered in violation of the anti-kickback statute; or

treatment rendered in violation of the Corporate Practice of Medicine Doctrine.

178.   The compliances of the referrals with Minnesota law were susceptible of

knowledge by Defendants MDI and Appleman because those defendants could ascertain

whether the MRI scans were medically necessary or issued pursuant to kickback

agreements; whether Defendants MDI and Appleman had indeed paid kickbacks for the

referrals; and/or whether the ownership structure of Defendant MDI violated the

Corporate Practice of Medicine Doctrine.

179.   Defendants MDI and Appleman asserted the medical necessities of their MRI

scans while knowing the assertions to be false or without knowing the truth of the

assertions.   Alternatively, Defendants MDI and Appleman certified that their MRI

referrals did not violate Minnesota law by seeking reimbursement from Plaintiff even

though Defendants MDI knew the scans were non-compensable due to underlying

violations of the anti-kickback statute and the Corporate Practice of Medicine Doctrine.

180.   By submitting the misrepresentations to Plaintiffs, Defendants MDI and

Appleman intended to induce Plaintiffs into reimbursing Defendants MDI and Appleman

for medically unnecessary diagnostic testing, diagnostic testing that violated the

prohibition on the payment of kickbacks for patients, and/or diagnostic testing rendered by a lay-owned facility illegible for reimbursement under controlling law.

181.   The submissions of facially valid insurance claims induced Plaintiffs to pay Defendant MDI at least $553,673.99 since the incorporation of Defendant MDI.

182.   In determining whether to pay for the insurance claims submitted by Defendants MDI and Appleman, Plaintiffs relied on the representations of Defendants MDI and Appleman with respect to the compensability of the submitted MRI scans.

183.   In relying on the intentional misrepresentations of Defendants MDI and Appleman, Plaintiffs paid Defendant MDI at least $553,673.99, including the claims itemized in Exhibit 7.

184.   The damages are attributable to the misrepresentations of Defendants MDI and Appleman because Plaintiffs must rely on the facial validity of insurance claims in deciding whether to pay requests for reimbursements.  This is especially true in the no-fault context, which requires insurers to pay or deny claims in a statutorily limited amount of time.

185.   Defendants MDI and Appleman are therefore liable to Plaintiffs for amounts of damages that will ultimately be determined at trial.

## COUNT 5 – FRAUDULENT CONCEALMENT
### (DEFENDANTS MDI AND APPLEMAN)

186. Plaintiffs re-allege, re-plead and incorporate by reference all paragraphs set forth above as if fully set forth herein.

187. Defendants MDI and Appleman concealed from Plaintiffs the fact that Defendants MDI and Appleman systematically paid for MRI referrals.

188. Defendants MDI and Appleman concealed their rental agreements with doctors for the payments of illegal kickbacks by making the agreements confidential. Specifically, the "Confidential Rental Agreements" read that they "cannot be released to third parties without the expressed written consent of MDI." (Ex. 3, para. 10).

189. Even if Defendants MDI and Appleman had disclosed that they had entered into rental agreements, Defendants MDI and Appleman further concealed the actual purposes of the agreements by mischaracterizing the agreements as purportedly legitimate payments for "rent" and the leasing of office supplies.

190. Plaintiffs exercised reasonable diligence by conducting an investigation of Defendant MDI, including, but not limited to, examinations under oaths of patients who had treated with Defendant MDI

191. Despite this exercise of reasonable diligence, Plaintiffs did not discover that Defendants MDI and Appleman paid kickbacks for MRI referrals due to the confidentiality of the rental agreements entered into by Defendants MDI and Appleman with referring chiropractors.

192. Plaintiffs received concrete proof of the kickback scheme in the spring and summer of 2013 when the Minnesota Board of Chiropractic Examiners entered into agreements for corrective actions with four different chiropractors and when Plaintiffs obtained internal documents originating from Defendant MDI that confirmed the payments of kickbacks.

193.  As the fraudulent concealment of Defendants Appleman and MDI tolled the statute of limitations until the spring of 2013, Plaintiff may seek damages for any and all payments it has made to Defendant MDI and Appleman since the incorporation of Defendant MDI.

## COUNT 6 – FRAUDULENT CONCEALMENT
## (DEFENDANTS MDI AND APPLEMAN)

194. Plaintiffs re-allege, re-plead and incorporate by reference all paragraphs set forth above as if fully set forth herein.

195. Since the incorporation of Defendant MDI, Defendants MDI and Appleman have actively attempted to conceal the lay ownership of Defendant MDI.

196. Defendant Appleman's name does not appear anywhere on the Articles of Incorporation for Defendant MDI.

197. In the course of seeking reimbursement from Plaintiff, Defendants MDI and Appleman submitted claims for reimbursement on HCFA 1500 forms.  These forms are used for the billings of medical procedures.  *See* Minn. Stat. § 62J.52, subd. 2 (2013). Further, the form requires the electronic signature of the relevant "physician or supplier including degrees or credentials…." The use of the HCFA 1500 form, which is to be used in conjunction with medical services, demonstrates that Defendant Appleman intended to represent Defendant MDI as a legitimate and authorized practitioner of the healing arts as opposed to a lay-owned facility.

198. When Defendant MDI received an MRI referral from a clinic or chiropractor, the referred patient needed to sign a "Medical Lien" that promised that the patient's attorney

or insurer would reimburse Defendant MDI for the "medical services" that Defendant MDI provided to the patient.  The reference to "medical services" and a "Medical Lien" again indicate that Defendant Appleman intended to represent Defendant MDI as a medical facility rather than a lay-owned facility.

199. The interpretive reports generated by Defendant MDI listed "Mobile Diagnostic Imaging" at the top of the reports and are signed by a medical doctor and a diplomate from the American Chiropractic Board of Radiology.  The reports do not name or refer to Defendant Appleman.  These reports create the false impression that Defendant MDI is a medical clinic consisting of doctors.

200. In a recent lawsuit filed against Defendant MDI and Appleman, Defendant Appleman denied founding Defendant MDI and denied serving as a chief executive officer of the company.  (*See* Answer and Separate Defenses of Mobile Diagnostic Imaging, Inc., and Michael Appleman, Individually to Plaintiffs' Complaint, paras. 8 – 9, *State Farm Mut. Auto. Ins. Co., et al. v. Mobile Diagnostic Imaging, Inc., et al.* No. 12-1056 (JRT/AJB)).

201. However, another lawsuit recently discovered by Plaintiffs revealed that Defendant Appleman represented himself as the owner of Defendant MDI.  (*See* Complaint, *Appleman d/b/a Mobile Diagnostic Imaging v. Eggers*, No. 27-CV-08-13795 (Hennepin County District Court June 3, 2008)).

202. Further, the "Confidential Rental Agreements" entered into between Defendants MDI and Appleman and the Defendant Clinics and Chiropractors give the appearance that Defendant Appleman owns Defendant MDI.  (*See* Ex. 3 at 2).

203. In addition to demonstrating that Defendants MDI and Appleman engaged in a course of conduct, the above facts demonstrate that Plaintiffs could not have, even with the exercise of reasonable diligence, concretely determined that Defendant Appleman owned Defendant MDI.

204. After learning of other litigation filed in 2012 against Defendant Appleman for his ownership of Defendant MDI, Plaintiffs conducted further investigation.

205. Among other evidence, the investigation discovered that Defendant Appleman had previously admitted in other judicial proceedings that Defendant Appleman was "doing business as" MDI.

206. Any statute of limitations should therefore be tolled, and Plaintiffs may seek damages for any and all payments it has made to Defendant MDI and Appleman since the incorporation of Defendant MDI.

## COUNT 7 – COMMON LAW FRAUD
## (THE DEFENDANT CLINICS AND CHIROPRACTORS)

207. Plaintiffs re-allege, re-plead and incorporate by reference all paragraphs set forth above as if fully set forth herein.

208.  In issuing MRI referrals to Defendants MDI and Appleman, the Defendant Clinics and Chiropractors submitted forms to Defendant MDI (and eventually Plaintiffs) affirming the medical necessity of the MRI referrals.  (*See* Ex. 8).  Alternatively, the submissions of the referral forms by the Defendant Clinics and Chiropractors implied that the forms sought reimbursement for compensable services that did not violate state law.

209.   The representations regarding compensability of the MRI referrals were false as the submitted forms sought reimbursement for medically unnecessary care and/or scans that violated the state anti-kickback statutes.

210.   The representations dealt with the past facts of whether the MRI scan referrals had been issued out of medical necessity.  Alternatively, the representations dealt with the present fact about the compensability of the MRI scans.

211.   The misrepresentations were material because, under Minnesota law, an insurer does not need to compensate a medical provider or diagnostic facility for medically unnecessary treatment or treatment rendered in violation of the anti-kickback statutes.

212.   The medical necessity of the MRI referrals and the compliance of the referrals with Minnesota law were susceptible of knowledge by the Defendant Clinics and Chiropractors because those defendants knew whether the MRI scans were truly medically necessary and/or knew whether they had received kickbacks in exchange for the MRI referrals.

213.   The Defendant Clinics and Chiropractors asserted the medical necessity of their MRI scans while knowing the assertions to be false or without knowing the truth of the assertions.  The Defendant Clinics and Chiropractors also certified that their MRI referrals did not violate Minnesota law.

214.   By submitting the misrepresentations to Plaintiffs via Defendants MDI and Appleman, the Defendant Clinics and Chiropractors intended to induce Plaintiffs into reimbursing Defendants MDI and Appleman for MRI scans that were not compensable under Minnesota law.  The Defendant Clinics and Chiropractors had incentives for

42

Plaintiffs to pay Defendants MDI and Appleman because Defendants Appleman and MDI would in turn pay kickbacks to the Defendant Clinics and Chiropractors.

215.   The submissions of facially valid insurance claims induced Plaintiffs to pay the claims listed in Exhibit 7.

216.   In determining whether to pay for the insurance claims submitted by Defendants MDI and Appleman, Plaintiffs relied on the misrepresentations of the Defendant Clinics and Chiropractors.  Specifically, Plaintiffs relied on the signed statements of the Defendant Clinics and Chiropractors with respect to the compensability of their MRI referrals to Defendants MDI and Appleman.

217.   In relying on the intentional misrepresentations of the Defendant Clinics and Chiropractors, Plaintiffs paid out the money itemized in Exhibit 7.

218.   The damages in Exhibit 7 are attributable to the misrepresentations of the Defendant Clinics and Chiropractors because Plaintiffs must rely on the facial validities of insurance claims in deciding whether to pay requests for reimbursements.  This is especially true in the no-fault context, which requires insurers to pay or deny claims in a statutorily limited amount of time.  In making referrals to Defendant MDI, the Defendant Clinics and Chiropractors attested to the medical necessity of their referrals in referral forms that the referring doctors signed.  Plaintiffs received copies of the MRI referral forms when it received medical records from Defendants MDI and Appleman.

219.  Each Defendant Clinic and Chiropractor is therefore liable to Plaintiffs for the amount Plaintiffs paid in reliance on the respective misrepresentations of each Defendant Clinic and Chiropractor.  (*See* Ex. 7).

## COUNT 8 – PRIVATE ATTORNEY GENERAL – CONSUMER FRAUD
### (ALL DEFENDANTS)

220.   Plaintiffs re-allege, re-plead and incorporate by reference all paragraphs set forth above as if fully set forth herein.

221.   Plaintiffs have standing to pursue claims pursuant to Minn. Stat. § 325F.69, subd. 1, Minn. Stat. § 8.31, subd. 3a and *Group Health Plan, Inc., et al. v. Phillip Morris, Inc., et al.* 621 N.W.2d 2, 4 (Minn. 2001).

222.   Defendants MDI and Appleman used and employed fraud, false pretenses, misrepresentations, misleading statements and deceptive practices by paying for referrals and/or performing unwarranted diagnostic scans but misrepresenting those scans as being compensable under Minnesota law.

223.   Defendants MDI and Appleman also used and employed fraud, false pretenses, misrepresentations, misleading statements and deceptive practices by representing Defendant MDI to be an authorized and legitimate practitioner of the healing arts even though a layman, i.e., Defendant Appleman, owned Defendant MDI.  Among other practices, the aforementioned pretenses, misleading statements and deceptive practices included: the certifications made by Defendants MDI and Appleman when they submitted health insurance claim forms that they were entitled to reimbursement under Minnesota law; the listing of two doctors on the MRI reports for scans conducted by Defendant MDI; the references by Defendant MDI to its services as "medical services" in "medical" lien forms that patients were asked to sign; and the reference by Defendant MDI to the interpreting radiologists as "our radiologists" on its web site.

224.   The Defendant Clinics and Chiropractors used and employed fraud, false pretenses, misrepresentations, misleading statements and deceptive practices by prescribing medically unwarranted medical treatment and/or referring patients to Defendants MDI and Appleman in exchange for money while representing that the referrals occurred for purely medical reasons.

225.   Defendants used and employed such practices to induce Plaintiffs' insureds to undergo treatments and testing with Defendants.  Additionally, Defendants used and employed such practices to induce Plaintiffs into reimbursing MRI scans.

226.   Defendants made the above misrepresentations in connection with attempts to market and sell medical services.  Such services fall under the statutory definition of "merchandise…."  *See* Minn. Stat. § 325F.68, subd. 2 (2013).

227.   The misrepresentations of Defendants misled, deceived and damaged Plaintiffs by causing them to pay medical benefits otherwise not payable under Minnesota law.  In paying insurance claims, Plaintiffs relied on the misrepresentations made by Defendants in health insurance claim forms, referral forms and other claims documentation.

228.   Alternatively, Defendants proximately caused Plaintiffs' injuries because the submission of no-fault claims forced Plaintiffs to investigate and pay claims within a statutorily limited amount of time or pay claims through an expedited, compulsory no-fault arbitration process that precluded full assessments of Defendants' misconduct.

229.   By and through their scheme to maximize profits through kickbacks and unwarranted medical procedures, Defendants have illegally and unfairly deprived Plaintiffs' insureds with the appropriate care for their accidents; unnecessarily reduced

the medical expense benefits available to Plaintiffs' insureds; caused Plaintiffs' insureds

to waste their time and financial resources by attending unwarranted diagnostic testing;

and have misled and confused Plaintiffs' insureds as to their true medical conditions and

the relationships between Defendants.

230.   Additionally, Defendants MDI and Appleman unfairly misled Plaintiffs'

insureds into believing they were undergoing testing with an authorized and legitimate

practitioner of the healing arts when indeed a layperson, i.e., Defendant Appleman,

owned Defendant MDI.

231.   While this case involves Plaintiffs' insureds and Plaintiffs, the modus operandi

of Defendants (i.e., exchanging money for the referral of patients) negatively impacted

the public at large through the possibility of increased premiums, lost work productivity

and wages due to the insureds' attendances of medically unnecessary appointments, the

diversion of PIP benefits from more beneficial care, and decreased public trust in the

medical field.  Thus, the current suit will benefit the public at large in addition to

Plaintiffs.

232.   Further, the fraud, false pretenses, misrepresentations, misleading statements,

and deceptive practices of Defendants MDI and Appleman negatively impacted the

public at large by subjecting car accident victims to medical care by a facility under the

control of an individual who did not need to follow the Hippocratic oath and by

misleading car accident victims into believing that they were treating with a legitimate

practitioner of the healing arts rather than a lay-owned facility.

46

233.   As a result of Defendants' misrepresentations to Plaintiffs' insureds, Plaintiffs and the public at large, Plaintiffs are entitled to recover damages from each Defendant Clinic and Chiropractor in accordance with the money Plaintiffs have paid for the MRI scans resulting from the respective referrals of each Defendant Clinic and Chiropractor to Defendants MDI and Appleman.  (*See* Ex. 7).   Defendants are also entitled to recover damages for all scans paid to Defendant MDI.   Further, Plaintiffs are entitled to recover their costs and disbursements, including the costs of investigation and reasonable attorneys' fees, from Defendants.

234.   Additionally, Plaintiffs' insureds, the public at large and Plaintiffs have been damaged by Defendants' violation of Minn. Stat. § 325F.69, and Plaintiffs are entitled to an injunction prohibiting Defendants MDI and Appleman from conducting MRI scans.

## COUNT 9 – NO-FAULT FRAUD
### (DEFENDANTS MDI AND APPLEMAN)

235.   Plaintiffs re-allege, re-plead and incorporate by reference all paragraphs set forth above as if fully set forth herein.

236.   Plaintiffs are reparation obligors as defined by the Minnesota No-Fault Act.

237.   Defendants MDI and Appleman provided products or services for which basic economic benefits were allegedly payable.

238.   However, the benefits paid by Plaintiffs to Defendant MDI and Appleman or Plaintiffs' insureds were not payable because: (1) Defendants MDI and Appleman knowingly conducted medically unnecessary MRI scans and only medically necessary MRI scans are compensable under Minnesota law; (2) Defendants MDI and Appleman

secured the MRI referrals underlying the paid benefits by paying kickbacks and the law voids an insurer's obligation to pay for scans secured by kickbacks; and/or (3) Defendants MDI and Appleman intentionally violated the Corporate Practice of Medicine Doctrine and the law voids the obligation of an insurer to pay for the expenses of treatment providers that knowingly and intentionally violate the Corporate Practice of Medicine Doctrine.

239.   Defendants MDI and Appleman intentionally misrepresented the legality and compensability of its MRI scans to Plaintiffs.

240.   The materiality of these intentional misrepresentations is proven by the fact that Plaintiffs would not reimburse Defendants MDI and Appleman for medically unnecessary diagnostic testing, testing that violated the anti-kickback statute or testing that violated the Corporate Practice of Medicine Doctrine.

241.   In paying Defendants MDI and Appleman for medical care provided to Plaintiffs' insureds, Plaintiffs relied on Defendants' misrepresentations in health insurance claim forms, medical records and applications, among other documents, and deferred to the representations of Defendants MDI and Appleman with respect to the compensability of their MRI scans.

242.   Plaintiffs have indeed paid no-fault benefits due to the aforementioned misrepresentations.  (*See* Ex. 7).

243.   As Plaintiffs relied on the material and intentional misrepresentations of Defendants MDI and Appleman when Plaintiffs paid basic economic benefits that were not payable, Plaintiffs are entitled to damages in an amount to be determined at trial.

## COUNT 10 – NEGLIGENT MISREPRESENTATION
## (DEFENDANTS MDI AND APPLEMAN)

244. Plaintiffs re-allege, re-plead and incorporate by reference all paragraphs set forth above as if fully set forth herein.

245. During the courses of their professions and during transactions in which they held financial interests, Defendants MDI and Appleman supplied false information to Plaintiffs to guide Plaintiffs in their business transactions.

246. Defendants MDI and Appleman provided false information with respect to: (1) the medical necessity of MRI scans performed on Plaintiffs' insureds; (2) the compensability of the MRI scans in light of the anti-kickback statute; and (3) the compensability of the MRI scans in light of the Corporate Practice of Medicine Doctrine.

247. At a minimum, Defendants MDI and Appleman failed to use reasonable care or competence in communicating to Plaintiffs that they were entitled to insurance benefits even though Plaintiffs had no legal obligation to reimburse Defendants MDI and Appleman for their MRI scans.

248. In determining whether to compensate Defendants MDI and Appleman for the MRI scans they billed, Plaintiffs relied on the assertions by Defendants MDI and Appleman with respect to the compensability of the MRI scans.

249. Plaintiffs were justified in relying on the representations of Defendants MDI and Appleman about the compensability of the MRI scans because Defendants MDI and Appleman submitted facially valid insurance claims.

250.  As seen by Exhibit 7, Plaintiff was financially harmed by relying on the aforementioned misrepresentations made by Defendants MDI and Appleman.

251.  Defendants MDI and Appleman are therefore liable to Plaintiff for the MRI scans that Plaintiff paid in reliance on the misrepresentations of Defendants MDI and Appleman.

## COUNT 11 – NEGLIGENT MISREPRESENTATION (THE DEFENDANT CLINICS AND CHIROPRACTORS)

252. Plaintiffs re-allege, re-plead and incorporate by reference all paragraphs set forth above as if fully set forth herein.

253. During the course of their professions and during transactions in which they held financial interests, the Defendant Clinics and Chiropractors supplied false information to Plaintiffs to guide Plaintiffs in their business transactions

254. The Defendant Clinics and Chiropractors provided false information with respect to the medical necessity of MRI scans performed on Plaintiffs' insureds.  The Defendant Clinics and Chiropractors asserted the legal compensability of their MRI referrals in referral forms submitted to Defendant MDI and then Plaintiffs.  (*See* Ex. 8). The Defendant Clinics and Chiropractors knew that the referral forms would be submitted to Plaintiff because: 1) each MRI referral form had a section that requested the identity of the insurer that would be billed; and 2) the Defendant Clinics and Chiropractors had already determined the patients' respective insurers because the Defendant Clinics and Chiropractors also had to bill the respective insurers for the patients' chiropractic treatments.

50

255. At a minimum, the Defendant Clinics and Chiropractors failed to use reasonable care or competence by communicating the medical necessity and/or legal compensability of each MRI scan to Plaintiffs through the MRI referral forms.

256. In determining whether to pay no-fault benefits for the MRI scans conducted by Defendants MDI and Appleman, Plaintiffs relied on the assertions contained in the patient referral forms provided by the Defendant Clinics and Chiropractors to Defendants MDI and Appleman.

257. Plaintiffs were justified in relying on the representations of the Defendant Clinics and Chiropractors about the medical necessity and compensability of each MRI scan because each MRI referral from the Defendant Clinics and Chiropractors to Defendants MDI and Appleman appeared to be a facially valid MRI referral.

258. As seen by Exhibit 7, Plaintiffs sustained financial harmed by relying on the aforementioned misrepresentations made by the Defendant Clinics and Chiropractors.

259. The Defendant Clinics and Chiropractors are therefore liable to Plaintiffs for the respective MRI scans that Plaintiffs paid in reliance on the respective misrepresentations of the Defendant Clinics and Chiropractors.

## COUNT 12 – CIVIL CONSPIRACY
### (ALL DEFENDANTS)

260. Plaintiffs re-allege, re-plead and incorporate by reference all paragraphs set forth above as if fully set forth herein.

261. A civil conspiracy exists when two or more people combine to accomplish an unlawful purpose or a lawful purpose by unlawful means. The conspiracy requires that an underlying tort be present.

262. Defendants MDI and Appleman combined with each Defendant Clinic and Chiropractor to increase their profits through the issuance and acceptance of MRI scans illegally incentivized by kickbacks.

263. The aforementioned combination is evidenced by agreements that include, but are not limited to, "Confidential Rental Agreements" where Defendant MDI and Appleman purport to pay each Defendant Clinic and Chiropractor for rent and the leasing of telephones, computers and other office equipment. (*See* Ex. 3). In reality, however, Defendants MDI and Appleman have not leased any office equipment and the "Confidential Rental Agreement" is a mere pretext for the payment of illegal kickbacks for patient referrals.

264. The combinations entered into by Defendants MDI and Appleman with the Defendant Clinics and Chiropractors resulted in the above-described torts of common law fraud, consumer fraud, no-fault fraud, and negligent misrepresentation.

265. Each Defendant Clinic and Chiropractic is therefore jointly and severally liable along with Defendants MDI and Appleman for any and all reimbursement paid by Plaintiffs to Defendants MDI and Appleman for the MRI scans that each Defendant Clinic and Chiropractic respectively referred to Defendant MDI. (*See* Ex. 7).

## COUNT 13– PIERCING OF THE CORPORATE VEIL
### (ALL DEFENDANTS)

266.   Plaintiffs re-allege, re-plead and incorporate by reference all paragraphs set forth above as if fully set forth herein.

267.   Each entity served as the mere instrumentality or alter, corporate ego of Defendant Appleman and the Defendant Chiropractors.

268.   As described above, Defendants have systematically defrauded both Plaintiffs' insureds and Plaintiffs.  As Defendant MDI and the Defendant Clinics have been used for the purpose of fraudulently obtaining money from Plaintiffs, the corporate veils of those entities may be pierced to hold Defendants Appleman and the Defendant Chiropractors liable for the acts of Defendant MDI and the Defendant Clinics.

## COUNT 14 – UNJUST ENRICHMENT
### (ALL DEFENDANTS)

269. Plaintiffs re-allege, re-plead and incorporate by reference all paragraphs set forth above as if fully set forth herein.

270.   As described above, Defendants billed Plaintiffs and misrepresented the medical necessities of MRI referrals.

271.   Alternatively, Defendants either paid or received money for patient referrals.

272.   Defendants subsequently received payments from Plaintiffs (directly or through the no-fault arbitration process) to compensate Defendants for the purportedly necessary and legal medical care.

273.   The above facts, among others, demonstrate that Defendants knowingly received something of value to which they were not entitled.

274.   In order to obtain payments from Plaintiffs, Defendants made misrepresentations to Plaintiffs' insureds and Plaintiffs and violated state law regarding medical kickbacks. Under such circumstances, it would be unjust for Defendants to retain the benefits paid by Plaintiffs.

275.   Plaintiffs are therefore entitled to receive damages in amount that will be determined at trial to compensate Plaintiff for the money that each Defendant has unjustly received.

WHEREFORE, Plaintiffs pray for the judgment of this Court as follows:

276.   Ordering Defendants Appleman and MDI to reimburse Plaintiffs for all the money Plaintiffs have paid to Defendants Appleman and MDI due to their violations of the Corporate Practice of Medicine Doctrine and the anti-kickback statutes;

277.   Ordering the Count 3 Defendants to pay Plaintiffs in treble the damages Plaintiffs have suffered due to Defendants' respective participations in each kickback scheme;

278.   Ordering each Defendant to pay Plaintiffs the damages Plaintiffs have suffered due to their respective participations in each kickback scheme;

279.   Ordering Defendant Appleman that, as a lay individual, cannot own, manage, or otherwise operate any diagnostic imaging businesses;

280.   Ordering that any and all outstanding balances purportedly owed by Plaintiffs to Defendants MDI and Appleman are void and uncollectible due to Defendants' knowing and intentional violation of the anti-kickback laws;

281. Ordering that all outstanding balances purportedly owed by Plaintiffs to Defendants MDI or Appleman are void and uncollectible due to the knowing and intentional violation of the Corporate Practice of the Medicine Doctrine by Defendants MDI and Appleman;

282. Awarding Plaintiffs' interest and costs, including attorneys' fees; and

283. Awarding Plaintiffs such other and further relief as the Court deems just.


STEMPEL & DOTY, PLC

Dated: October 14, 2013

By: /s/ Richard S. Stempel
Richard S. Stempel, MN #161834
Bradley L. Doty, MN # 276364
Steven P. Pope, MN # 0390174
Tony L. Douvier, MN # 0390184
Benjamin B. Hanson, MN #0395039
Attorneys for Plaintiff
41 12th Avenue North
Hopkins, MN 55343
(952) 935-0908

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

STEMPEL & DOTY, PLC

Dated: <u>October 14, 2013</u>

By: <u>/s/ Richard S. Stempel</u>
Richard S. Stempel, MN #161834
Bradley L. Doty, MN # 276364
Steven P. Pope, MN # 0390174
Tony L. Douvier, MN # 0390184
Attorneys for Plaintiff
41 12th Avenue North
Hopkins, MN 55343
(952) 935-0908